# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 12-11200

In the Matter of: American Housing Foundation,

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2013

Lyle W. Cayce
Clerk

Debtor

Terrill J. Horton,

Appellant,

versus

Walter O'Cheskey, as Chapter 11 Trustee,

Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:12-CV-20

Before SMITH, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Terrill Horton appeals a judgment of the district court affirming a judg-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11200

ment of the bankruptcy court disallowing his claim for a $1.4 million loan guar-anteed by the debtor, American Housing Foundation ("AHF"). Those courts concluded that, because AHF was insolvent and did not receive reasonably equivalent value for the guaranty, it could be set aside as a fraudulent convey-ance under § 548(a)(1)(B) of the Bankruptcy Code. Horton also was not entitled to the good-faith defense of § 548(c), and the bankruptcy court denied his fraud and breach-of-fiduciary-duty claims against AHF.

Horton appeals on a number of grounds, all of which require this court to believe his version of events. Finding no clear error in any of the factual findings of the bankruptcy court, we affirm.

I.

The bankruptcy court determined after a bench trial that Horton had entered into an arrangement with the debtor, AHF, and its president, Steve Sterquell, for the sole purpose of creating an illegal tax shelter. Pursuant to that arrangement, Horton gave a loan of about $1.4 million to a new entity, White Chapel H.I. Ltd. ("White Chapel"), in which Horton would have a 99.99% limited-partnership interest. For an initial capital contribution of $20, AHF would have a 0.01% general partnership interest. Horton delivered the $1.4 million in a check directly to AHF as the general partner. Horton later signed a non-recourse promissory note for an additional $15.7 million (but did not actually deliver that money) to increase his stake in White Chapel to that amount.

AHF guaranteed the $1.4M loan from Horton to White Chapel, and that guaranty is the central dispute. The bankruptcy court found that, because AHF was insolvent and the 0.01% interest in White Chapel was not reasonably equivalent value for the guaranty, it was a fraudulent conveyance that could be set aside.

2

No. 12-11200

Moreover, Horton could not claim the good-faith exception to the fraudulent-conveyance rule because the bankruptcy court determined that the whole transaction was structured so that Horton could post $15 million in *losses* and thereby claim $3 million in illegal tax benefit. Horton never intended for the White Chapel transaction to produce any value; he merely expected it to post losses that, as the 99.99% limited partner, he could claim as deductions so he could receive the tax benefit as well as the return of his loan. The bankruptcy court relied on an email from Sterquell to Horton explicitly charting the expected loss on the investment and the corresponding tax benefit that would result. Horton claimed never to have read the email, but the bankruptcy court disbelieved that testimony.

## II.

We review a district court's affirmance of a bankruptcy court decision by applying the same standard of review to the bankruptcy court decision that the district court applied. We thus generally review factual findings for clear error and conclusions of law *de novo*. A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed. We give deference to the bankruptcy court's determinations of witness credibility.

*Liberty Mut. Ins. Co. v. Lamesa Nat'l Bank (In re Schooler)*, 725 F.3d 498, 503 (5th Cir. 2013) (internal quotes and citations omitted).

## III.

Section 548(a)(1) of the Bankruptcy Code permits the bankruptcy court to set aside as fraudulent certain conveyances made from, or obligated by, the debtor within two years before the bankruptcy petition was filed. The bankruptcy court found that Horton's arrangement did not meet the actual-fraud provision of § 548(a)(1)(A) because the trustee could not establish that the

No. 12-11200

scheme was intended to defraud AHF's other creditors.  The court held, how-ever, that the guaranty met the constructive-fraud requirements of § 548(a)(1)(B)(i) and (ii)(I) because AHF was insolvent at the time and did not receive reasonably equivalent value for the guaranty.

Horton challenges only the finding regarding reasonably equivalent value.  The bankruptcy court had found no such value because AHF was only a 0.01% general partner in White Chapel (the entity that received the loan) and would share in the losses and profits to that extent (0.01%) only.  Further, Horton offered no other "evidence of value received by AHF in exchange for its guaranty."  Horton argues without elaboration, on the other hand, that his loan strengthened the corporate group, fulfilled AHF's capitalization of another company, and allowed AHF's use of the funds (admittedly as the general part-ner in White Chapel), which in turn reduced or eliminated claims against the estate, preserved AHF's worth, and delayed bankruptcy.

"A bankruptcy court's finding of reasonably equivalent value," however, "is a factual determination subject to a 'clearly erroneous' standard of review." *Stanley v. U.S. Bank Nat'l Ass'n (In re TransTexas Gas Corp.)*, 597 F.3d 298, 306 (5th Cir. 2010).  "The question of reasonable equivalence is largely a ques-tion of fact, as to which considerable latitude must be allowed to the trier of the facts."  *Id.* (internal quotation marks omitted).

The bankruptcy court's finding that there was no reasonably equivalent value was not clearly erroneous.  As the 0.01% partner, AHF would receive only that proportion of any profit realized by use of the loan, which was payable with interest within five months.  Horton's only responses are that the loan later did shore up AHF's capitalization, maintained its worth, and reduced other claims against the estate.  Even if that were true, the bankruptcy court

4

No. 12-11200

determines reasonably equivalent value at the time of the exchange.[1] It was not clearly erroneous to find, given that AHF had a 0.01% partnership interest in White Chapel at the time of the exchange, that AHF did not receive reasonably equivalent value for its guaranty of a $1.4 million loan.

Horton argues that, even if the guaranty meets the requirements of § 548(a)(1)(B), he is entitled to the good-faith defense of § 548(c). That provision permits a claimant who provided value in good faith to retain an interest in the voided obligation to the extent he gave value to the debtor. § 548(c). Horton claims he gave $1.4 million in value to AHF. As already discussed, the bankruptcy court's finding that AHF did not receive any value in exchange for its guaranty was not clearly erroneous.

Even if Horton *did* give some value to AHF for the guaranty—say, about $140 given AHF's 0.01% interest—the bankruptcy court also found that Hortron did not enter the transaction in good faith. Courts review a determination of good faith for clear factual error, *Hannover*, 310 F.3d at 800, and look to whether the claimant was on notice of the debtor's insolvency or the fraudulent nature of the transaction:

> The good faith test under Section 548(c) is generally presented as a two-step inquiry. The first question typically posed is whether the transferee had information that put it on inquiry notice that the transferor was insolvent or that the transfer might be made with a fraudulent purpose. While the cases frequently cite either fraud or insolvency, these two elements are consistently identified as the triggers for inquiry notice. The fraud or insolvency predicate is set forth in countless cases . . . .
>
> . . . The weight of the authority . . . indicates that a court should focus on the circumstances specific to the transfer at

---

[1] *Jimmy Swaggart Ministries v. Hays (In re Hannover Corp.)*, 310 F.3d 796, 802 (5th Cir. 2002) ("Thus, consistent with economic reality, this and other circuits unequivocally hold that for purposes of § 548 the value of an investment, even a risky one, such as we have before us now, is to be determined at the time of purchase.").

issue—that is, whether a transferee reasonably should have
known . . . of the fraudulent intent underlying the transfer.

Once a transferee has been put on inquiry notice of either the
transferor's possible insolvency or of the possibly fraudulent pur-
pose of the transfer, the transferee must satisfy a "diligent inves-
tigation" requirement.

*Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439 B.R. 284, 310–12 (S.D.N.Y. 2010) (internal quotations and citations omitted).

The bankruptcy court found that Horton was a "successful and shrewd businessman" and that even if he were to be believed that he didn't understand the details of the deal, "he did understand and, in fact, he counted on both the $3+ million tax refund and repayment of his loan to White Chapel." Thus, "[r]elative to the motives of legitimate creditors in the AHF Bankruptcy Case, the Court [could not] conclude that Horton acted in good faith in connection with the Horton Deal." In other words, and as Horton recognizes, the bank-ruptcy court's judgment regarding good faith was based on its finding that the arrangement was an illegal tax shelter. Thus the guaranty was fraudulently given, and Horton had reason to know of the fraudulent intent.

Horton disputes the bankruptcy court's finding that the arrangement was an illegal tax shelter. He claims error on three grounds: first, that the bankruptcy court improperly applied the "economic substance doctrine" to characterize the deal as an abusive tax shelter; second, that the Trustee's expert's testimony was not admissible; and third, that the bankruptcy court did not have jurisdiction to determine that the deal was an illegal tax shelter.[2]

_____

[2] Before addressing these arguments, we note that Horton admitted in the record that the tax scheme was fraudulent and claimed that he was duped by Sterquell. Indeed, Horton's whole alternative argument based on fraud and breach of fiduciary duty is that the scheme was fraudulent and he was defrauded. It is hard to square his admission that the scheme

No. 12-11200

The bankruptcy court did not explicitly say it was applying the economic-substance doctrine. It merely found that, based on the evidence discussed in the facts, the sole purpose of the Horton Deal was to create an illegal tax shelter. Horton contends that the bankruptcy court failed to apply the doctrine correctly; he does not dispute that the doctrine can apply. He also does not dispute that the doctrine has an objective component (whether the arrangement has a reasonable prospect of realizing profit) as well as a subjective component (whether the taxpayer concluded the transaction for a legitimate, non-tax purpose). *See Klamath Strategic Inv. Fund v. United States*, 568 F.3d 537, 543–44 (5th Cir. 2009).

None of the errors that Horton asserts is based on a mistake of law. All are based on his hoping that this court believes his version of events: that his subjective motive was not solely for the purpose of claiming the tax deduction and that the bankruptcy court ignored the potential for White Chapel and Hurike (another entity involved) to make a profit. As discussed, however, there was plenty of evidence that this transaction was fraudulent and that Horton knew or should have known about it.

Horton's only other issue on appeal is that the doctrine was applied to the wrong transaction—to the White Chapel-Horton-AHF transaction rather than to Hurike, which used AHF funds to invest in sham properties. This argument defies common sense. The question is whether Horton himself, in giving money to White Chapel with the expectation that it would post a loss that he could claim on his tax return, was a sham transaction. Whether Hurike was part of the arrangement further down the line that would ultimately help realize the loss of profits, and whether Horton knew of Hurike's role, do not

---

was fraudulent with his claim in the briefs that it was not an abusive tax shelter. In an abundance of caution, we nevertheless address these arguments.

7

change either component of the economic substance test. Horton still entered into a transaction that he knew or should have known had no reasonable prospect of making a profit, for the sole purpose of claiming some tax deductions.

The good-faith exception does not apply if Horton knew or should have known of the fraudulent nature of the transaction. The bankruptcy court was not wrong to apply the economic-substance doctrine to determine whether the deal was a fraudulent enterprise. And surely the bankruptcy court did not clearly err in finding that, given the evidence, Horton knew or should have known it was a fraudulent tax scheme.

Horton claims that the bankruptcy court erred in admitting the testimony of Stephen Coen, the trustee's expert. Horton maintains that the testimony was irrelevant and not based on any "explanation," "factual or legal basis," or "methodology." Without his testimony, the bankruptcy court's opinion is left "without evidentiary support." We agree with the district court, however, that even if the testimony was wrongly included, the court relied on several other pieces of evidence in coming to its conclusion.

Even so, the court did not abuse its discretion in admitting the testimony. Coen had eighteen years of experience working as an attorney for the IRS. He also explicitly worked on cases involving illegal tax shelters. He did provide an "explanation" and a "factual basis" for his conclusions: He reviewed all the documents and transactions involved in the Horton Deal. He concluded that the deal was a fraudulent tax scheme and that Horton knew or should have known about it. The bankruptcy court has wide latitude to admit such expert testimony.[3]

---

[3] *See EEOC v. Boh Bros. Constr. Co.,* No. 11-30770, 2013 U.S. App. LEXIS 19867, at *33 (5th Cir. Sept. 27, 2013) (en banc) ("In rulings on the admissibility of expert opinion evidence the trial court has broad discretion and its rulings must be sustained unless manifestly erroneous") (quoting *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013)).

No. 12-11200

Horton claims, finally, that the bankruptcy court did not have jurisdiction to consider the tax status of the arrangement under § 505 of the Bankruptcy Code and the Declaratory Judgment Act ("DJA"). The Trustee agrees that under § 505 of the Code,[4] the bankruptcy court may decide the tax liability only of debtors and their estates but not of creditors and other non-debtors.[5] The Trustee also agrees that the DJA prohibits the federal court from "declar-[ing] the rights and other legal relations of any interested party" with respect to federal tax matters except pursuant to § 505.[6]

The bankruptcy court's judgment does not violate either § 505 or the DJA because it does not determine Horton's tax liability; it does not determine that Horton owes the IRS any money. The bankruptcy court merely considered the intended tax consequences of the transaction and whether it had a legitimate business purpose as *evidence* of Horton's lack of good faith. Indeed, Horton did not claim a tax deduction, and if he did, he could still litigate the issue with the IRS.

Horton asserts, without elaboration or supporting argumentation, that the bankruptcy court's determinations may nevertheless "involve complex questions of collateral estoppel." Horton cites no case, however, suggesting

---

[4] "[A]fter determination by a court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax against the estate, the debtor, or a successor to the debtor, as the case may be, subject to any otherwise applicable law." 11 U.S.C. § 505(c).

[5] *See IRS v. Prescription Home Health Care, Inc. (In re Prescription Home Health Care, Inc.)*, 316 F.3d 542, 548 (5th Cir. 2002) ("Sister circuits that have addressed directly whether bankruptcy courts have jurisdiction over the tax liabilities of non-debtors have held they do not.").

[6] "In a case of actual controversy within its jurisdiction, except with respect to . . . a proceeding under section 505 or 1146 of title 11, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201.

No. 12-11200

that a bankruptcy court's determination of the likely tax status of a transaction as part of a good-faith analysis might have any preclusive effect in future litigation.

Indeed, were Horton to attempt to claim his deduction, issue preclusion would not be a problem. If the IRS in that litigation tried to claim that the issue was precluded, *then* Horton could argue that the bankruptcy court could not have made a tax liability determination because it lacked the subject-matter jurisdiction to do so; and without subject-matter jurisdiction, issue preclusion does not attach.

In other words, the bankruptcy court did not have jurisdiction to determine Horton's tax liability, and should that liability be an issue in future litigation, the bankruptcy court's judgment would not collaterally estop future litigation of that issue. The bankruptcy court *did* have jurisdiction, however, to determine whether Horton had good faith; and to determine good faith, it had jurisdiction to consider whether the transaction was likely fraudulent; and to determine whether the transaction was likely fraudulent, it had jurisdiction to determine that the arrangements had all the trappings of an abusive tax shelter. These findings have no effect beyond the present litigation.


IV.

With respect to Horton's fiduciary duty claim, the bankruptcy court found that AHF owed a duty to White Chapel and not to Horton and that in any event, the facts would not give rise to such a claim. Horton claims on appeal that the bankruptcy court erred by finding that AHF owed no direct fiduciary duty to Horton. Because this court can affirm on any grounds in the

record,[7] we affirm on the ground that, even if a fiduciary duty were owed, it was not violated because Horton knew or should have known that the whole partnership was a fraudulent scheme.

For the same reasons that the bankruptcy court rejected the good-faith defense under § 548(c), there is no breach of fiduciary duty. Because Horton knew or should have known that Sterquell would use his loan funds as part of a fraudulent scheme to post losses through White Chapel, the mere fact that the scheme failed does not mean he can claim a breach of fiduciary duty against AHF.

Horton maintains that Sterquell misused the funds by not investing in the Hurike properties. But those properties were part of the fraud, and Horton still expected the investment in these properties to create losses. It is no argument to say that Sterquell breached a fiduciary duty by not fulfilling his end of a fraudulent bargain. The bankruptcy court's factual finding that AHF did not undertake acts amounting to a breach of a duty was not clearly erroneous.

Finally, with respect to the fraud claim, the bankruptcy court found that the claim fails on the merits because Horton did not rely on representations from AHF and Sterquell that they knew to be false and that they made intending to defraud him.[8] Horton did not dispute that finding on appeal. Still, he

---

[7] *Ad Hoc Group of Timber Noteholders v. Pac. Lumber Co. (In re Scotia Pac. Co., LLC)*, 508 F.3d 214, 218–19 (5th Cir. 2007) ("A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law de novo. This Court may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." (internal citations and quotation marks omitted)).

[8] Reliance on a representation is an element of fraud. *See Daldav Assocs., L.P. v. Lebor*, 391 F. Supp. 2d 472, 475 (N.D. Tex. 2005) ("The elements for actionable fraud under Texas law are: (1) a material representation was made; (2) it was false when made; (3) the speaker knew it was false, or made it recklessly without knowledge of its truth and as a positive assertion; (4) the speaker made it with the intent that it should be acted upon; and (5) the party acted in reliance and suffered injury as a result.").

No. 12-11200

claimed in bankruptcy court that AHF fraudulently misrepresented its solvency. The bankruptcy court determined, however, that Horton did not rely on this representation at all.

In fact, Horton did not *expect* AHF to be solvent; he understood that the whole arrangement was structured so that he could somehow post losses that would run directly to him so he could claim a tax refund. Thus, he was not fraudulently induced by promises of false profit or solvency because he expected the enterprise to lose profit. A finding of "reasonable reliance" or "reliance" is one of fact,[9] and the bankruptcy court did not clearly err by finding that Horton did not rely on any representations.

The judgment of the district court, affirming the judgment of the bankruptcy court, is AFFIRMED.

---

[9] C*f.  Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 260 (5th Cir. 1993).