CARL E. STEWART, Chief Judge:
This case, arising out of the Stanford International Bank Ponzi scheme, requires us to determine whether the Texas Uniform Fraudulent Transfer Act's good faith affirmative defense allows Defendants-Appellees to retain fraudulent transfers received while on inquiry notice of the Ponzi scheme. We hold it does not. We REVERSE the district court's judgment and RENDER judgment in favor of the Plaintiff-Appellant.
I. BACKGROUND
The SEC uncovered the Stanford International Bank ("SIB") Ponzi scheme in 2009. For close to two decades, SIB issued fraudulent certificates of deposit ("CDs") that purported to pay fixed interest rates higher than those offered by U.S. commercial banks as a result of assets invested in a well-diversified portfolio of marketable securities. In fact, the "returns" to investors *454 were derived from new investors' funds. The Ponzi scheme left over 18,000 investors with $7 billion in losses. The district court appointed Plaintiff-Appellant Ralph S. Janvey ("the receiver") to recover SIB's assets and distribute them to the scheme's victims.
Defendants-Appellees are Gary D. Magness and several entities in which he maintains his wealth (collectively, "Magness"). Magness was among the largest U.S. investors in SIB. Between December 2004 and October 2006, Magness purchased $79 million in SIB CDs. As of November 2006, Magness's family trust's investment committee monitored his investments, including the SIB CDs.
Bloomberg reported in July 2008 that the SEC was investigating SIB. At an October 2008 meeting, the investment committee persuaded Magness to take back, at minimum, his accumulated interest from SIB. The receiver asserts this decision was the result of mounting skepticism about SIB. Magness asserts it was because he was experiencing significant liquidity problems given the tumbling stock market.
Later that month, Magness's financial advisor approached SIB for a redemption. On October 9, 2008, SIB instead agreed to loan Magness $25 million on his accumulated interest. SIB applied Magness's outstanding "accrued CD interest" to repay most of this loan. In other words, Magness repaid $24.3 million of the $25 million loan with "paper interest" and $700,000 with cash. Between October 24 and 28, 2008, Magness borrowed an additional $63.2 million from SIB. In total, Magness received $88.2 million in cash from SIB in October 2008.
The receiver sued Magness to recover funds under theories of (1) fraudulent transfer pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA") and (2) unjust enrichment. The receiver obtained partial summary judgment as to funds in excess of Magness's original investment, and Magness returned this $8.5 million in fraudulent transfers to the receiver.
The receiver moved for partial summary judgment, seeking a ruling that the remaining amounts at issue were also fraudulent transfers. Magness moved for summary judgment on his TUFTA good faith defense and the receiver's unjust enrichment claim. The district court granted the receiver's motion and denied Magness's motion.
Just before trial, the district court sua sponte reconsidered its denial of Magness's motion for summary judgment and rejected the receiver's unjust enrichment claim. Thus, the only issue presented to the jury was whether Magness received $79 million,[1] already determined to be fraudulent transfers, in good faith. After Magness's case-in-chief, the receiver moved for judgment on grounds that (1) Magness was estopped from claiming he took the transfers in good faith and (2) no reasonable jury could conclude Magness established TUFTA's good faith defense. The district court did not rule on the motion.
The jury determined that Magness had inquiry notice that SIB was engaged in a Ponzi scheme, but not actual knowledge. Inquiry notice was defined in the jury instructions as "knowledge of facts relating to the transaction at issue that would have excited the suspicions of a reasonable person and led that person to investigate."
*455 The jury also determined that an investigation would have been futile. A futile investigation was defined in the jury instructions as one where "a diligent inquiry would not have revealed to a reasonable person that Stanford was running a Ponzi scheme."
The receiver moved for entry of judgment on the verdict, arguing that the jury's finding of inquiry notice defeated Magness's TUFTA good faith defense as a matter of law. The receiver also renewed his motion for judgment as a matter of law. The district court denied the receiver's motions and held that Magness satisfied his good faith defense. The receiver renewed his post-trial motions and moved for a new trial. The court denied these motions and issued its final judgment that the receiver take nothing aside from his prior receipt of $8.5 million.
On appeal, the receiver argues that (1) Magness was estopped from contesting his actual knowledge of SIB's fraud or insolvency; (2) the jury's finding of inquiry notice defeated Magness's TUFTA good faith defense as a matter of law; (3) the district court's jury instructions were erroneous and reduced Magness's burden to establish good faith; and (4) the district court erred by granting Magness's motion for summary judgment on the receiver's unjust enrichment claim. Because this case is resolved by our TUFTA good faith analysis, we reach only the second of the receiver's arguments.
II. DISCUSSION
A.
We review de novo a renewed motion for judgment as a matter of law. Montano v. Orange County, 842 F.3d 865, 873 (5th Cir. 2016). If "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party," judgment as a matter of law is proper. Id. Evidence is viewed "in the light most favorable to the nonmovant." Id.
B.
Texas, like most states, has adopted a version of the Uniform Fraudulent Transfer Act ("UFTA"). UFTA was designed "to prevent debtors from transferring their property in bad faith before creditors can reach it." BMG Music v. Martinez , 74 F.3d 87, 89 (5th Cir. 1996). TUFTA allows the recovery of property transfers made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1) (2017). Recipients of fraudulent transfers can prevent clawback actions by proving they received property "in good faith and for a reasonably equivalent value." Id. § 24.009(a). Such recipients bear the burden of proving TUFTA's good faith defense. Flores v. Robinson Roofing & Constr. Co., Inc. , 161 S.W.3d 750, 756 (Tex. App.--Fort Worth 2005, pet. denied).
The term good faith is not defined by TUFTA or UFTA and has not been interpreted by the Supreme Court of Texas. Lower courts analyzing TUFTA good faith have overwhelmingly adopted an objective definition: "A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith and is not a bona fide purchaser." Hahn v. Love , 321 S.W.3d 517, 527 (Tex. App.--Houston [1st Dist.] 2009, pet. denied) ; see also GE Capital Commercial, Inc. v. Worthington Nat'l Bank , 754 F.3d 297, 313 (5th Cir. 2014) (describing Hahn as "the most thorough and well-reasoned Texas case applying TUFTA's 'good faith' defense"). Courts evaluating TUFTA good faith consider whether a transferee received *456 fraudulent transfers with actual knowledge or inquiry notice of fraud or insolvency. See, e.g. , Citizens Nat'l Bank of Tex. v. NXS Constr., Inc., 387 S.W.3d 74, 85 (Tex. App.--Houston [14th Dist.] 2012, no pet.). A finding of either defeats good faith. Id.
C.
The receiver contends that the district court impermissibly grafted a novel "futility exception" onto the TUFTA good faith defense. The futility exception arises from bankruptcy law. The Bankruptcy Code's fraudulent transfer section contains an affirmative defense that mirrors TUFTA good faith. 11 U.S.C. § 548(c) (2017) (A transferee "that takes for value and in good faith ... may retain any interest transferred ... to the extent that such transferee ... gave value to the debtor in exchange for such transfer."). Courts interpreting § 548(c)'s good faith defense permit transferees to "rebut" a finding of inquiry notice by demonstrating that they conducted a "diligent investigation" into their suspicions. See, e.g. , Templeton v. O'Cheskey , 785 F.3d 143, 164 (5th Cir. 2015). Some courts permit defendants to rebut inquiry notice in another way. They allow a transferee on inquiry notice who did not investigate to retain good faith, provided the transferee proves the fraudulent scheme's complexity would have rendered any investigation futile. See, e.g. , Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC , 439 B.R. 284, 317 (S.D.N.Y. Sep. 17, 2010) (" Bayou IV ").
In a motion for summary judgment, Magness argued that this futility exception applies to TUFTA good faith. The district court agreed, relying on its analysis of the issue in a Janvey v. Alguire[2] order denying summary judgment. To accept the futility exception, the district court applied O'Cheskey's diligent investigation requirement to TUFTA good faith. It acknowledged that neither TUFTA nor Texas courts describe a duty to investigate as a required part of TUFTA's good faith defense, citing to Hahn , but it concluded that the Supreme Court of Texas would adopt the diligent investigation requirement. To support this decision, the district court observed that the Bankruptcy Code "may be used to interpret UFTA or its Texas equivalent." Janvey v. Democratic Senatorial Campaign Comm'n, Inc., 712 F.3d 185, 194 (5th Cir. 2013) (" DSCC "). The district court also noted that neither party was opposed to applying O'Cheskey 's diligent investigation requirement to TUFTA good faith.
The district court next determined that the diligent investigation requirement obligated a futility exception. The district court based its decision on a lack of binding authority requiring the conclusion that a transferee on inquiry notice who fails to investigate lacks good faith. Both the parties and the district court considered cases analyzing bankruptcy good faith rather than TUFTA good faith. Ultimately, the district court held that a transferee with inquiry notice must conduct a diligent investigation into the facts that put the transferee on inquiry notice to retain TUFTA good faith. In the alternate, a transferee could satisfy TUFTA good faith by proving that such an investigation would have been futile.
Because the district court denied Magness's motion for summary judgment on TUFTA good faith, the questions of notice and futility were left to the jury. While the jury determined Magness was on inquiry notice of SIB's Ponzi scheme, it also determined that an investigation into the *457 scheme would have been futile. The district court thus determined that Magness retained good faith. The receiver asks this court to reject the district court's application of the futility exception to TUFTA good faith and find that, under Hahn , the jury's finding of inquiry notice defeats Magness's TUFTA good faith defense as a matter of law.
D.
The Supreme Court of Texas has not addressed whether TUFTA good faith requires a diligent investigation or a corresponding futility exception, so we must make an " Erie guess" as to the exception's applicability. SMI Owen Steel Co., Inc. v. Marsh USA, Inc., 520 F.3d 432, 437 (5th Cir. 2008) ; see also Erie R.R. Co. v. Tompkins , 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We rely on the state lower courts and other persuasive authorities to guide our inquiry. GE Capital , 754 F.3d at 311.
Texas lower courts and federal district courts considering TUFTA good faith rely on Hahn to hold that transferees found to have actual knowledge or inquiry notice of fraud cannot claim TUFTA's good faith defense. Citizens Nat'l , 387 S.W.3d at 84-86 (upholding jury's finding that transferee had either actual or inquiry notice, which defeated TUFTA good faith defense); Vasquez v. Old Austin Rd. Land Tr. , No. 04-16-00025-CV, 2017 WL 3159466, at *3 (Tex. App.--San Antonio 2017, pet. denied) (concluding that the trial court erred by granting transferee TUFTA good faith on summary judgment because of evidence that the transferees were on inquiry notice); SEC v. Helms, No. A-13-CV-1036 ML, 2015 WL 1040443, at *14 (W.D. Tex. Mar. 10, 2015) (ordering TUFTA good faith defeated in the absence of actual knowledge of fraud because of evidence that "would have led a reasonable investor to believe the transfer was fraudulent"); see also Hahn , 321 S.W.3d at 527-29 (denying motion for summary judgment on TUFTA good faith because of evidence supporting a finding of actual knowledge or inquiry notice).
We have previously approved of Hahn 's conception of TUFTA good faith and upheld a district court's Hahn -based jury instructions. GE Capital , 754 F.3d at 313 (relying on Hahn to determine that TUFTA good faith requires an objective analysis). The jury instructions stated in relevant part: "To establish that it acted in good faith, [the transferee] must prove by a preponderance of the evidence that it lacked actual and [inquiry] knowledge of the debtor's fraud." Id. at 301. The instructions did not ask the jurors to determine whether an investigation would have been futile. Id . And in fact, no court has considered extending TUFTA good faith to a transferee on inquiry notice who later shows an investigation would have been futile.
The court below is the first to supplement Hahn 's TUFTA good faith analysis with interpretations of Bankruptcy Code good faith. 11 U.S.C. § 548(c). We have in prior decisions relied on § 548 to interpret various TUFTA provisions because TUFTA is based on UFTA, which itself is based on § 548. See, e.g. , DSCC, 712 F.3d at 194 (applying an analysis of § 548(a)(1) to an analysis of TUFTA § 24.005(a)(1) ). However, we have previously declined to rely on § 548(c) to interpret TUFTA good faith. GE Capital , 754 F.3d at 312 n.21 ("We do not base our Erie guess on bankruptcy jurisprudence .... Certain authorities indicate that § 548 is not necessarily substantively congruent with state-law counterparts, despite a common ancestry.").
Our prior disinclination to rely on § 548(c) to interpret TUFTA good faith is *458 reinforced by the fact that neither § 548(c)'s text nor its legislative history defines good faith. Jimmy Swaggart Ministries v. Hayes , 310 F.3d 796, 800 (5th Cir. 2002). As a result, courts applying the good faith defense disagree "as to what conditions ought to allow a transferee this defense." Id. Even courts that agree on certain conditions disagree as to the meanings of those conditions. For example, this court has agreed with others that a transferee on inquiry notice "must satisfy a 'diligent investigation' requirement" to succeed on a § 548(c) good faith defense. Templeton , 785 F.3d at 164 (quoting Horton v. O'Cheskey , 544 F. App'x 516, 520 (5th Cir. 2013) ). But we have not had the opportunity to define this requirement, and "the case law is not clear" as to its nature. Bayou IV , 439 B.R. at 312. Courts also disagree as to whether § 548(c) permits a futility exception. Compare id. at 317 (articulating the futility exception), with Zayed v. Buysse, No. 11-CV-1042 (SRN/FLN), 2012 WL 12893882, at *22-23 (D. Minn. Sep. 27, 2012) (rejecting the futility exception). This lack of conformity counsels against relying on § 548(c) interpretations to construe TUFTA good faith.
Even if we relied on § 548(c) as guidance for applying TUFTA good faith, the futility exception's inquiry does not implicate TUFTA good faith's central question: whether, at the time he receives property, a transferee has knowledge that "would excite the suspicions of a person of ordinary prudence and put him on inquiry" of that property's fraudulent nature. Hahn , 321 S.W.3d at 527. Regardless of the intricate nature of a fraud or scheme, failing to inquire when on inquiry notice does not indicate good faith. Helms , 2015 WL 1040443, at *14.
The TUFTA good faith affirmative defense is an exception to the rule that fraudulent transfers must be returned. No prior court considering TUFTA good faith has applied a futility exception to this exception, and we decline to hold that the Supreme Court of Texas would do so. Transferees seeking to retain fraudulent transfers might offer up evidence of undertaken investigations to prove a reasonable person's suspicions would not have been aroused when the transfer was received. Id. at *14. But the fact that a fraud or scheme is later determined to be too complex for discovery does not excuse a finding of inquiry notice and does not warrant the application of TUFTA good faith. Because the jury determined Defendants-Appellees were on inquiry notice when they received $79 million in fraudulent transfers, their TUFTA good faith defense is defeated.
III. CONCLUSION
For the foregoing reasons, we REVERSE the district court's judgment and RENDER judgment in favor of the receiver.

Magness originally invested $79 million in SIB. He borrowed $88.2 million in cash from SIB, but he paid $700,000 back to SIB in cash and has already ceded $8.5 million to the receiver. The $79 million "loaned" to Magness from SIB remains in dispute.

This case was severed from Janvey v. Alguire , No. 3:15-CV-00724-N (N.D. Tex.).