# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 24, 2019

Lyle W. Cayce
Clerk

No. 17-11526

RALPH S. JANVEY, in his Capacity as Court-Appointed Receiver for the Stanford International Bank Limited et al,

Plaintiff - Appellant

v.

GMAG, L.L.C.; MAGNESS SECURITIES, L.L.C.; GARY D. MAGNESS; MANGO FIVE FAMILY INCORPORATED, in its Capacity as Trustee for the Gary D. Magness Irrevocable Trust,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

ON PETITION FOR PANEL REHEARING

Before STEWART, Chief Judge, and DENNIS and WILLETT, Circuit Judges.

PER CURIAM:

The original opinion in this case was filed on January 9, 2019. *Janvey v. GMAG, LLC,* 913 F.3d 452 (5th Cir. 2019). There, we held that a transferee on inquiry notice of a transfer's fraudulent nature is not entitled to the Texas Uniform Fraudulent Transfer Act's ("TUFTA") good faith affirmative defense. Because the jury determined that the Defendants-Appellees were on inquiry notice of the fraudulent nature of transfers received from a Ponzi scheme, we reversed the district court's judgment and rendered judgment in favor of the

No. 17-11526

Plaintiff-Appellant. Defendants-Appellees submitted a petition for panel rehearing and a petition for rehearing en banc, which are now pending before the court. In these petitions, Defendants-Appellees requested, in the alternative, that we certify a question to the Supreme Court of Texas on grounds that interpreting TUFTA's good faith defense is a significant issue of first impression, and the panel's interpretation differs from that of other jurisdictions to analyze their own Uniform Fraudulent Transfer Act ("UFTA") good faith defenses.

The petition for panel rehearing is GRANTED, the original opinion is VACATED, and the panel substitutes the following opinion certifying a question to the Supreme Court of Texas.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO THE TEXAS CONSTITUTION ART. 5 § 3–C AND TEXAS RULE OF APPELLATE PROCEDURE 58.1.

## I.    BACKGROUND

The SEC uncovered the Stanford International Bank ("SIB") Ponzi scheme in 2009. For close to two decades, SIB issued fraudulent certificates of deposit ("CDs") that purported to pay fixed interest rates higher than those offered by U.S. commercial banks as a result of assets invested in a well-diversified portfolio of marketable securities. In fact, the "returns" to investors were derived from new investors' funds. The Ponzi scheme left over 18,000 investors with $7 billion in losses. The district court appointed Plaintiff-Appellant Ralph S. Janvey ("the receiver") to recover SIB's assets and distribute them to the scheme's victims.

Defendants-Appellees are Gary D. Magness and several entities in which he maintains his wealth (collectively, "Magness"). Magness was among the largest U.S. investors in SIB. Between December 2004 and October 2006,

Magness purchased $79 million in SIB CDs. As of November 2006, Magness's family trust's investment committee monitored his investments, including the SIB CDs.

Bloomberg reported in July 2008 that the SEC was investigating SIB. At an October 2008 meeting, the investment committee persuaded Magness to take back, at minimum, his accumulated interest from SIB. The receiver asserts this decision was the result of mounting skepticism about SIB. Magness asserts it was because he was experiencing significant liquidity problems given the tumbling stock market.

Later that month, Magness's financial advisor approached SIB for a redemption. On October 9, 2008, SIB instead agreed to loan Magness $25 million on his accumulated interest. SIB applied Magness's outstanding "accrued CD interest" to repay most of this loan. In other words, Magness repaid $24.3 million of the $25 million loan with "paper interest" and $700,000 with cash. Between October 24 and 28, 2008, Magness borrowed an additional $63.2 million from SIB. In total, Magness received $88.2 million in cash from SIB in October 2008.

The receiver sued Magness to recover funds under theories of (1) TUFTA fraudulent transfer and (2) unjust enrichment. The receiver obtained partial summary judgment as to funds in excess of Magness's original investment, and Magness returned this $8.5 million in fraudulent transfers to the receiver.

The receiver moved for partial summary judgment, seeking a ruling that the remaining amounts at issue were also fraudulent transfers. Magness moved for summary judgment on his TUFTA good faith defense and the receiver's unjust enrichment claim. The district court granted the receiver's motion and denied Magness's motion.

Just before trial, the district court *sua sponte* reconsidered its denial of Magness's motion for summary judgment and rejected the receiver's unjust

enrichment claim. Thus, the only issue presented to the jury was whether Magness received $79 million,[1] already determined to be fraudulent transfers, in good faith. After Magness's case-in-chief, the receiver moved for judgment on grounds that (1) Magness was estopped from claiming he took the transfers in good faith and (2) no reasonable jury could conclude that Magness established TUFTA's good faith defense. The district court did not rule on the motion.

The jury determined that Magness had inquiry notice that SIB was engaged in a Ponzi scheme, but not actual knowledge. Inquiry notice was defined in the jury instructions as "knowledge of facts relating to the transaction at issue that would have excited the suspicions of a reasonable person and led that person to investigate." The jury also determined that an investigation would have been futile. A futile investigation was defined in the jury instructions as one where "a diligent inquiry would not have revealed to a reasonable person that Stanford was running a Ponzi scheme."

The receiver moved for entry of judgment on the verdict, arguing that the jury's finding of inquiry notice defeated Magness's TUFTA good faith defense as a matter of law. The receiver also renewed his motion for judgment as a matter of law. The district court denied the receiver's motions and held that Magness satisfied his good faith defense. The receiver renewed his post-trial motions and moved for a new trial. The court denied these motions and issued its final judgment that the receiver take nothing aside from his prior receipt of $8.5 million.

On appeal, the receiver argued that (1) Magness was estopped from contesting his actual knowledge of SIB's fraud or insolvency; (2) the jury's

---

[1] Magness originally invested $79 million in SIB. He borrowed $88.2 million in cash from SIB, but he paid $700,000 back to SIB in cash and has already ceded $8.5 million to the receiver. The $79 million "loaned" to Magness from SIB remains in dispute.

finding of inquiry notice defeated Magness's TUFTA good faith defense as a matter of law; (3) the district court's jury instructions were erroneous and reduced Magness's burden to establish good faith; and (4) the district court erred by granting Magness's motion for summary judgment on the receiver's unjust enrichment claim.

We initially decided this case on the second issue. Relying on the text of TUFTA and interpretations by the Texas lower courts, our court, and our circuit's district courts, we reversed the district court's judgment and rendered judgment in favor of the receiver. Magness filed petitions for panel rehearing and rehearing en banc, in which he raised the argument that we should certify the question of TUFTA good faith to the Supreme Court of Texas. Because the Texas courts to consider TUFTA good faith have not considered whether it includes a diligent investigation requirement or a futility exception, we certify the question—whether TUFTA good faith requires a transferee on inquiry notice to conduct an investigation or show such an investigation would have been futile—to the Supreme Court of Texas. *See In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010) (quoting *Free v. Abbott Labs.,* 164 F.3d 270, 274 (5th Cir. 1999)) ("[C]ertification may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed.").

## II.    DISCUSSION

Texas, like most states, has adopted a version of UFTA, which was designed "to prevent debtors from transferring their property in bad faith before creditors can reach it." *BMG Music v. Martinez*, 74 F.3d 87, 89 (5th Cir. 1996). Like UFTA, TUFTA allows the recovery of property transfers made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1). Recipients of fraudulent transfers can prevent clawback actions by proving they received property "in good faith and

for a reasonably equivalent value." *Id.* § 24.009(a). Such recipients bear the burden of proving TUFTA's good faith defense. *Flores v. Robinson Roofing & Constr. Co., Inc.*, 161 S.W.3d 750, 756 (Tex. App.—Fort Worth 2005, pet. denied).

The term good faith is not defined by TUFTA or UFTA and has not been interpreted by the Supreme Court of Texas. The most prominent definition of TUFTA good faith requires that to retain good faith, a transferee cannot possess either actual or inquiry notice of a transfer's fraudulent nature. *Hahn v. Love,* 321 S.W.3d 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith and is not a bona fide purchaser."); *see also GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 313 (5th Cir. 2014) (describing *Hahn* as "the most thorough and well-reasoned Texas case applying TUFTA's 'good faith' defense"); *Tex. Pattern Jury Charges—Bus., Consumer, Ins. & Emp't* § 105.29 (2016 ed.) ("A party takes an asset . . . in good faith if the party (1) had no actual notice of the fraudulent intent of the debtor and (2) lacked knowledge of such facts as would cause a person of ordinary prudence to question whether the debtor had fraudulent intent.").

There is no dispute that Magness was on inquiry notice of the fraudulent nature of SIB's transfers. The jury made this finding. We also know that Magness did not undertake an investigation prior to accepting the transfers. As the court below explained in a pre-judgment order, "[t]he parties agree that the Defendants [Magness] did not perform any inquiry before redeeming their CDs. However, the Defendants argue that they are excused from this requirement because any investigation would have been futile and would not have led to discovery of Stanford's fraudulent purpose." This brings us to the

crux of this case: does TUFTA good faith require a transferee on inquiry notice to conduct an investigation, and if so, can that transferee retain the good faith defense if he does not conduct an investigation but later convinces the factfinder that such an investigation would not have turned up the fraudulent purpose?

The lower court answered yes to both questions. It acknowledged that "[n]either TUFTA nor Texas courts explicitly describe a duty to investigate as a required part of TUFTA's good faith defense. *See, e.g., Hahn,* 321 S.W.3d at 526–27." However, the court, "in making an *Erie* guess as to how Texas law would apply," found it reasonable to adopt the approach taken by the Fifth Circuit in interpreting the Bankruptcy Code's mirror image good faith defense to fraudulent transfer. *See* 11 U.S.C. § 548(c) (A transferee "that takes for value and in good faith . . . may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer."). The Fifth Circuit, like many other courts interpreting § 548(c) good faith, permits transferees to "rebut" a finding of inquiry notice by demonstrating that they conducted a "diligent investigation" into their suspicions. *In re Am. Hous. Found.*, 785 F.3d 143, 164 (5th Cir. 2015). Neither Magness nor the receiver disputed this case's application. Thus, the lower court decided that a transferee on inquiry notice must conduct a diligent investigation to retain the TUFTA good faith defense.

The lower court next determined that the diligent inquiry requirement obligated a futility exception. While the court found no controlling Texas or Fifth Circuit law on point, it was persuaded that a transferee meets the diligent inquiry requirement if he shows that an investigation would have been futile. Because the district court denied Magness's motion for summary judgment on TUFTA good faith, the questions of inquiry notice and futility were presented to the jury. While the jury determined Magness was on inquiry

notice of SIB's Ponzi scheme, it also determined that an investigation into the scheme would have been futile. The district court thus determined that Magness retained good faith. On appeal, the receiver asked this court to reject the district court's application of the futility exception to TUFTA good faith and find that, under *Hahn*, the jury's finding of inquiry notice defeats Magness's TUFTA good faith defense as a matter of law.

In our prior opinion, we agreed with the receiver and held that "[r]egardless of the intricate nature of a fraud or scheme, failing to inquire when on inquiry notice does not indicate good faith." *GMAG,* 913 F.3d at 458. Our holding aligns with other decisions interpreting TUFTA good faith. *See Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74, 84–86 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (upholding jury's finding that transferee had either actual or inquiry notice, which defeated the TUFTA good faith defense); *Vasquez v. Old Austin Rd. Land Tr.*, No. 04-16-00025-CV, 2017 WL 3159466, at *3 (Tex. App.—San Antonio 2017) (concluding that the trial court erred by granting the transferee TUFTA good faith on summary judgment because of evidence that the transferees were on inquiry notice); *SEC v. Helms*, No. A-13-CV-1036 ML, 2015 WL 1040443, at *14 (W.D. Tex. Mar. 10, 2015) (denying TUFTA good faith in the absence of actual knowledge of fraud because of evidence that "would have led a reasonable investor to believe the transfer was fraudulent"); *Hahn*, 321 S.W.3d at 531 (denying motion for summary judgment on TUFTA good faith because of evidence supporting a finding of actual knowledge or inquiry notice).

In *Citizens National*, a Texas court of appeals evaluated a jury's rejection of a TUFTA good faith defense. 387 S.W.3d at 85–86. The jury instructions were pulled directly from *Hahn*'s definition of good faith: they instructed that good faith was defeated on grounds of actual or inquiry notice. *Id.* The court upheld the jury's finding that one transferee had either actual or

inquiry notice and thus did not prove the TUFTA good faith defense. *Id.* Magness argues this case is not on point because the court found the transferee "knew the transfer was fraudulent as to some creditors," and thus had actual notice—not inquiry notice. *Id.* at 86. However, another Texas case relied on the same principle to find inquiry notice sufficient to defeat the TUFTA good faith defense. *See Vasquez*, 2017 WL 3159466, at *3 (holding that the trial court erred in granting transferee TUFTA good faith on summary judgment because of evidence "sufficient to raise a genuine issue of material fact as to whether the appellees had [inquiry] notice that the appellants had a claim or interest in the property").

Federal courts have adhered to the *Hahn* standard as well. The Fifth Circuit, evaluating whether the TUFTA good faith defense required an objective or subjective analysis, upheld a district court's *Hahn*-based jury instructions. *GE Capital*, 754 F.3d at 313. The jury instructions stated in relevant part: "To establish that it acted in good faith, [transferee] must prove by a preponderance of the evidence that it lacked actual and [inquiry] knowledge of the debtor's fraud." *Id.* at 301. The instructions did not consider whether the transferee investigated his suspicions or whether such an investigation would have been futile. *Id.* A federal district court, relying on *Hahn*, similarly held that though it believed two transferees received transfers without actual knowledge of fraud, their TUFTA good faith defense was defeated because "there was significant evidence that should have led [transferee] to investigate [transferor] and the purported security interest it sought to acquire, and would have led a reasonable investor to believe the transfer was fraudulent." *Helms*, 2015 WL 1040443, at *14. In other words, inquiry notice defeated the TUFTA good faith defense.

Magness does not offer cases interpreting TUFTA good faith differently. Instead, he argues that the Supreme Court of Texas has interpreted inquiry

notice differently in the real property context. The Supreme Court of Texas previously held that a party who purchases land while on inquiry notice "is charged with notice of all the occupant's claims the purchaser might have reasonably discovered on proper inquiry." *Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex. 2001). But under Texas law, purchasers are subject to a preceding duty to "search the records, for they are the primary source of information as to title." *Strong v. Strong,* 98 S.W.2d 346, 348 (Tex. 1936). This duty does not arise from the definition of inquiry notice—it informs it. And while there is a diligent investigation requirement, there is no futility exception: "[t]he purchaser cannot say, and cannot be allowed to say, that he made a proper inquiry, and failed to ascertain the truth." *Id.* (citation omitted).

Magness also relies on the fact that other state courts have interpreted their UFTA provisions to include a diligent inquiry requirement for transferees on inquiry notice. *See, e.g., Carey v. Soucy,* No. 1 CA-CV 17-0533, 2018 WL 5556454, at *5 (Ariz. Ct. App. Oct. 30, 2018). However, we found no example of a court applying the diligent inquiry requirement to hold that a transferee retains good faith when he was on inquiry notice and did not investigate prior to accepting a transfer. In fact, three courts applying this requirement held that transferees in this position did not act in good faith. *In re Christou,* Nos. 06-68251-MHM, 06-68376-MHM, 06-68251-MHM, 2010 WL 4008191, at *3–4 (Bankr. N.D. Ga. Sept. 24, 2010); *Walro v. Hatfield,* No. 1:16-cv-3053-RLY-DML, 2017 WL 2772335, at *7 (S.D. Ind. June 27, 2017); *Klein v. McGraw*, No. 2:12-cv-00102-BSJ, 2014 WL 1492970, at *2, *8 (D. Utah Apr. 15, 2014).[2] But, notwithstanding these congruent outcomes, we recognize that other states have adopted a standard that the Texas courts have yet to consider. While the

---

[2] Reviewing these decisions, it appears that the jury's findings that Magness was on inquiry notice but would not have uncovered the Ponzi scheme had he investigated may sit in tension.

No. 17-11526

Texas courts have interpreted TUFTA good faith, they have not discussed the applicability of either the diligent inquiry requirement or the futility exception. Given that other states' UFTA good faith defenses have taken on a standard not considered by the Texas courts, we CERTIFY the following question to the Supreme Court of Texas:

> Is the Texas Uniform Fraudulent Transfer Act's "good faith" defense against fraudulent transfer clawbacks, as codified at Tex. Bus. & Com. Code § 24.009(a), available to a transferee who had inquiry notice of the fraudulent behavior, did not conduct a diligent inquiry, but who would not have been reasonably able to discover that fraudulent activity through diligent inquiry?

"We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified." *Janvey v. Golf Channel, Inc.,* 792 F.3d 539, 547 (5th Cir. 2015).



**A True Copy**
**Certified May 24, 2019**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

11