# IN THE SUPREME COURT OF TEXAS

No. 19-0452

RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER
FOR THE STANFORD INTERNATIONAL BANK LIMITED, ET AL., APPELLANTS,

v.

GMAG, L.L.C.; MAGNESS SECURITIES, L.L.C.; GARY D. MAGNESS;
MANGO FIVE FAMILY INCORPORATED, IN ITS CAPACITY AS TRUSTEE
FOR THE GARY D. MAGNESS IRREVOCABLE TRUST, APPELLEES

ON CERTIFIED QUESTION FROM THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**Argued October 8, 2019**

JUSTICE BUSBY delivered the opinion of the Court.

The Texas Uniform Fraudulent Transfer Act (TUFTA) is "designed to protect creditors from being defrauded or left without recourse due to the actions of unscrupulous debtors." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015). Creditors may invoke TUFTA to "claw back" fraudulent transfers from their debtors to third-party transferees. Yet even if a transfer is fraudulent, the statute does not always require the transferee to relinquish the transferred asset. If the transferee proves as an affirmative defense that it acted in good faith and the transfer was for a reasonably equivalent value, it may keep the transferred asset.

The U.S. Court of Appeals for the Fifth Circuit has requested our guidance on what constitutes good faith under TUFTA. Specifically, the Fifth Circuit asks whether a transferee on inquiry notice of fraudulent intent can achieve good faith without investigating its suspicions. Without comprehensively defining the contours of TUFTA's good-faith defense, we answer the question no. When a transferee on inquiry notice attempts to use TUFTA's affirmative defense to shield the transfer from the statute's clawback provision, it must show at minimum that it investigated its suspicions diligently. The investigation may not turn up additional evidence of fraud that should be imputed to the transferee, but that result does not negate the suspicions that a transferee on inquiry notice has at the time of the transfer. An investigation is an opportunity for the transferee to demonstrate its good faith, and requiring proof of an investigation negates any incentive transferees may have to remain willfully ignorant of fraud.

## BACKGROUND

Stanford International Bank, Ltd. (the Bank) ran a highly complex Ponzi scheme for almost two decades that attracted over $7 billion in investments. The Bank sold fraudulent certificates of deposit and issued "returns" to its old investors with money procured from new investors. The Bank deceived over 18,000 investors before the Securities and Exchange Commission (SEC) uncovered the scheme in 2009.

Appellee Gary D. Magness and several entities through which Magness invested his funds (collectively, Magness) were among the investors deceived by the Bank. Magness was one of the largest investors, purchasing $79 million of the fraudulent certificates of deposit. Magness withdrew his investments from the Bank sometime after news of the SEC's investigation became public. In 2008, Magness recovered $88.2 million through loans from the

2

Bank: his original investment of $79 million and $9.2 million of "accrued interest" credited to his account with the Bank. He later repaid $700,000 to the Bank, so his net return was $8.5 million.

Once the SEC discovered the Bank's Ponzi scheme, a federal district court appointed appellant Ralph S. Janvey (the Receiver) to recover the Bank's assets and distribute them among the investors equitably. The Receiver sought return of Magness's net payout from the Bank.

The Receiver sued Magness in federal district court to recover these funds, alleging (1) Magness's withdrawal from the Bank should be avoided because it constituted a fraudulent transfer under TUFTA, and (2) Magness was unjustly enriched. *Janvey v. GMAG, L.L.C.*, 913 F.3d 452, 454 (5th Cir. 2019), *vacated and superseded on reh'g*, 925 F.3d 229 (5th Cir. 2019). Magness responded that he satisfied TUFTA's good-faith defense, thus preventing the Receiver from avoiding the Bank's transfer to Magness. The district court granted the Receiver's motion for partial summary judgment for the net amount Magness received from the Bank in excess of his investment; Magness subsequently paid the Receiver this $8.5 million. *Id.* The district court left to the jury, however, whether the Receiver was entitled to claw back Magness's original $79 million investment. *Id.* The district court also denied Magness's motions for partial summary judgment regarding his defense of good faith and the Receiver's claim of unjust enrichment. *Id.*

Following trial, the jury found Magness had inquiry notice of the Ponzi scheme. *Id.* at 454–55. The jury charge provided: "Inquiry notice is knowledge of facts relating to the transaction at issue that would have excited the suspicions of a reasonable person and led that person to investigate." *Id.* at 454. The next question in the charge asked whether "a diligent inquiry would . . . have revealed to a reasonable person that Stanford was running a Ponzi

3

scheme." *Id.* at 455. The jury found that "an investigation [would] have been futile." *Id.* The district court denied the Receiver's motion for entry of judgment on the verdict and renewed motion for judgment as a matter of law, holding that Magness satisfied his good-faith affirmative defense. *Id.*

The Receiver appealed to the Fifth Circuit, raising several issues. *Id.* As relevant here, the Receiver contended "the jury's finding of inquiry notice defeated Magness's TUFTA good faith defense as a matter of law." *Id.* The Fifth Circuit agreed and reversed the district court's judgment, rendering judgment for the Receiver. *Id.* at 458. Specifically, the Fifth Circuit determined that Magness failed to satisfy TUFTA's good-faith affirmative defense and that there is no "futility exception" to that defense. *Id.*

Following the Fifth Circuit's decision, Magness sought rehearing. He urged the Fifth Circuit to certify the good-faith question instead of relying on its *Erie* guess. The Fifth Circuit vacated its prior opinion and certified the following question, which we accepted:

> Is the Texas Uniform Fraudulent Transfer Act's "good faith" defense against fraudulent transfer clawbacks, as codified at TEX. BUS. & COM. CODE § 24.009(a), available to a transferee who had inquiry notice of the fraudulent behavior, did not conduct a diligent inquiry, but who would not have been reasonably able to discover that fraudulent activity through diligent inquiry?

*Janvey v. GMAG, L.L.C.*, 925 F.3d 229, 235 (5th Cir. 2019).

### ANALYSIS

May a transferee on inquiry notice of a fraudulent transfer satisfy TUFTA's good-faith defense without conducting a diligent investigation? We conclude that the answer is no. If a transferee has actual knowledge of facts that would lead a reasonable person to suspect the transfer is voidable under TUFTA but does not investigate, the transferee may not achieve good-

4

faith status to avoid TUFTA's clawback provision—regardless of whether the transferee reasonably could have discovered the fraudulent activity through diligent inquiry.

## I.     Standard and scope of review

"The Supreme Court of Texas may answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent." TEX. R. APP. P. 58.1; *accord* TEX. CONST. art. V, § 3–c(a). The question certified requires us to interpret section 24.009 of the Texas Business and Commerce Code. *GMAG*, 925 F.3d at 235. We are asked to determine how a transferee found to be on inquiry notice can prove good faith to qualify for section 24.009's affirmative defense, which is a question of law. *Id.*

Although the Fifth Circuit certified its question without limiting this Court's response, we typically "provide answers solely as to the status of Texas law on the questions asked." *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 620 (Tex. 2004). This certified question is narrow and assumes the transferee did not investigate the suspicious circumstances initially raising concern.[1] We limit our holding to this question.

## II.     TUFTA protects creditors but provides an affirmative defense for transferees.

The Uniform Fraudulent Transfer Act (UFTA) was created to ensure defrauded creditors attain similar remedies. *See* UNIF. FRAUDULENT TRANSFER ACT Prefatory Note, 7A pt. II U.L.A. 4–7 (2006). Creditors may circumvent transfers made or obligations incurred by their debtors in certain circumstances, including where the transfer was made or obligation incurred with the

---

[1] "How our answer is to be applied to the facts of this case is the province of the certifying court." *Interstate Contracting Corp.*, 135 S.W.3d at 620 (citing *Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 798 (Tex. 1992)). Therefore, although Magness asserted in his briefing and at oral argument that he actually investigated his suspicions, we express no opinion on that issue.

5

intent to hinder, delay, or defraud any creditor. *Id.* § 7. Because "the intent to hinder, delay, or defraud creditors is seldom susceptible of direct proof," UFTA provides badges of fraud on which creditors and courts can rely. *Id.* at Prefatory Note. UFTA allows defrauded creditors to "obtain . . . avoidance of the transfer or obligation to the extent necessary to satisfy" their claims. *Id.* § 7(a)(1).

At least twenty-five jurisdictions have adopted some version of UFTA. *Id.* at Prefatory Note. Texas joined that group in 1987. TEX. BUS. & COM. CODE ch. 24. TUFTA's purpose mirrors UFTA's and is designed "to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016). TUFTA provides its own badges of fraud in "a list of eleven, nonexclusive indicia of fraudulent intent." *Id.* Similar to UFTA, TUFTA's badges provide guidance in determining whether a transfer was made or obligation incurred with actual intent to hinder, delay, or defraud a creditor. BUS. & COM. CODE § 24.005(b). If so, a creditor may invoke TUFTA's clawback provision to avoid the transfer or obligation, or to obtain certain other remedies. *Id.* § 24.008.

Avoidance is not unbridled, however. TUFTA protects a transferee against avoidance of a fraudulent transfer (or an obligee against avoidance of a fraudulent obligation) if it can prove it "took in good faith and for a reasonably equivalent value." *Id.* § 24.009(a). We have previously considered the "reasonably equivalent value" prong of this defense. *See generally Golf Channel*, 487 S.W.3d 560. Today, we address the "good faith" prong.

6

**III.** **The "good faith" prong of the transferee's defense includes concepts of inquiry notice, honesty in fact, and lack of willful ignorance.**

TUFTA does not define good faith. *Cf.* BUS. & COM. CODE § 24.002 (listing defined terms). UFTA, which we have used previously to interpret TUFTA,[2] similarly fails to define good faith. When a statute does not define a word or phrase, we look to its plain or common meaning. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). Mindful of TUFTA's instruction that "principles of law and equity . . . supplement its provisions," BUS. & COM. CODE § 24.011, we also consider the common law in determining the meaning of good faith.

Good faith has been defined as "[a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing . . . , or (4) absence of intent to defraud or to seek unconscionable advantage." *Good Faith*, BLACK'S LAW DICTIONARY (11th ed. 2019).[3] We have explained that good faith "requires conduct that is honest in fact and is free of both improper motive and willful ignorance of the facts at hand." *Gulf Energy*, 482 S.W.3d at 569 (defining good faith in the Texas Natural Resources Code when the Railroad Commission mistakenly plugged an offshore well). And we have recognized "reasonableness" as a component of good faith. *Wichita County v. Hart*, 917 S.W.2d 779, 786 (Tex. 1996) (combining "honesty in fact" with "reasonableness" to define what constitutes good faith under the Whistleblower Act).

We conclude that the meaning of good faith under TUFTA is consistent with these principles. A transferee must show that its conduct was honest in fact, reasonable in light of known facts, and free from willful ignorance of fraud. In applying this standard, Texas courts

---

[2] *Cf. Golf Channel*, 487 S.W.3d at 572–73 (using UFTA to construe TUFTA's "reasonably equivalent value" prong).

[3] *See R.R. Comm'n of Tex. v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 568 (Tex. 2016) (using dictionary to give undefined term in Natural Resources Code its plain meaning).

7

have considered "whether a transferee received fraudulent transfers with actual knowledge or inquiry notice of fraud." *GMAG*, 913 F.3d at 455–56 (citing *Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74, 85 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). The Fifth Circuit's certified question presumes, and the jury found, that Magness was on inquiry notice. We therefore focus our analysis on how a transferee with inquiry notice of fraud can prove good faith.

Inquiry notice is "[n]otice attributed to a person when the information would lead an ordinarily prudent person to investigate the matter further." *Inquiry Notice*, BLACK'S LAW DICTIONARY (11th ed. 2019). A person is on inquiry notice when he or she is "aware of facts that would have prompted a reasonable person to investigate." *Id.* Whether inquiry notice exists is determined at the time of the transfer, not with the benefit of hindsight. *See Golf Channel*, 487 S.W.3d at 569 (reaching same conclusion as to value and reasonable equivalency components of defense).

As one court of appeals has explained, a transferee is on inquiry notice when it "takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence" regarding "the fraudulent nature of an alleged transfer." *Hahn v. Love*, 321 S.W.3d 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A transferee on inquiry notice knows facts that are, or should be, suspicious: red flags that a reasonable person would have investigated prior to engaging in the transfer.[4]

There are at least two types of knowledge a transferee has when on inquiry notice: (1) actual knowledge of facts that raise a suspicion of fraud, and (2) constructive knowledge of

---

[4] *Quilling v. Stark*, No. 3-05-CV-1976-BD, 2007 WL 415351, at *3 (N.D. Tex. Feb. 7, 2007) (holding transferee's attempt to prove TUFTA's good-faith defense failed as matter of law because a reasonable person would have investigated legitimacy of transfer).

what the transferee could have uncovered in an investigation.  Understanding the distinction between these types of knowledge helps to explain why a transferee on inquiry notice of the debtor's fraudulent intent cannot prove good faith without conducting a diligent investigation—regardless of what that investigation would reveal.

In the context of inquiry notice, actual knowledge means "[k]nowledge of information that would lead a reasonable person to inquire further."  *Actual Knowledge*, BLACK'S LAW DICTIONARY (11th ed. 2019).  As we have recognized, actual knowledge of suspicious facts shifts a transferee's status from taking in good faith to being on inquiry notice of fraud.  *See Blum v. Simpson*, 17 S.W. 402, 403 (Tex. 1886) ("Taking all these circumstances in connection, it does seem that there was enough to arouse a suspicion in the mind of any prudent man that there was an intention on the part of [debtor] to dispose of his property in such a way that, if he had any creditors, . . . they would be deprived of all power to enforce their claims against him.").[5]

If a diligent inquiry could have uncovered facts showing fraudulent intent, Texas common law imputes knowledge of those additional facts to the transferee as well.  *Woodward v. Ortiz*, 237 S.W.2d 286, 289 (Tex. 1951).  Constructive knowledge is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person."  *Constructive Knowledge*, BLACK'S LAW DICTIONARY (11th ed. 2019).  The transferee can be charged with this knowledge in hindsight so long as it reasonably could have been discovered at the time of the transfer.  *Ruebeck v. Hunt*, 176 S.W.2d 738, 739 (Tex. 1943)

---

[5] *Blum* was decided under a predecessor fraudulent transfer statute providing that a purchaser with "notice" of the debtor's fraudulent intent could not keep the transfer. *See* Tex. Rev. Civ. Stat. Ann. art. 2465 (1879).

("Knowledge of facts that would cause a reasonably prudent person to make inquiry, which if pursued would lead to a discovery of fraud, is in law equivalent to knowledge of the fraud.").

**IV. A transferee on inquiry notice of fraud must conduct a diligent investigation to prove good faith.**

As framed by these legal principles regarding good faith and inquiry notice, the question we must decide is: how can a transferee prove good faith when it has actual knowledge of facts raising a suspicion that the transfer is voidable under TUFTA but lacks constructive knowledge of facts showing fraudulent intent? The jury found that Magness was on inquiry notice because he or his agents had actual "knowledge of facts relating to the transaction at issue that would have excited the suspicions of a reasonable person and led that person to investigate." In this circumstance, a transferee seeking to prove good faith must show that it investigated the suspicious facts diligently. A transferee who simply accepts a transfer despite knowledge of facts leading it to suspect fraud does not take in good faith. *See Blum*, 17 S.W. at 403 ("Yet [transferee] made no inquiry . . . . This showed a disposition on his part to make the trade, and get possession of the property at a low figure, no matter how much the seller's creditors might suffer thereby.").

Magness responds by pointing out that the jury also found "a diligent inquiry would not have revealed to a reasonable person that Stanford was running a Ponzi scheme." Because any investigation would have been fruitless, he contends knowledge of the Bank's fraudulent intent cannot be imputed to him, and therefore he took in good faith.

We agree with Magness's premise, but we reject his conclusion. Whether a transferee lacks constructive knowledge of the debtor's fraudulent intent does not, by itself, determine good faith. Magness's proposed rule does not acknowledge his actual knowledge of facts that raised a

10

suspicion of fraud. Nor does it acknowledge that choosing to remain willfully ignorant of any information an investigation might reveal is incompatible with good faith.

A transferee cannot show good faith in this situation because, irrespective of what a hypothetical investigation could reveal, the facts giving rise to a reasonable suspicion of fraud have not been confronted. Even if the fraud is inherently undiscoverable, the transferee still has actual knowledge of facts at the time of the transfer that would lead a reasonable person to suspect fraud and investigate. If the transferee fails to demonstrate its good faith and avoid willful ignorance by conducting a diligent investigation, it cannot be characterized as acting with honesty in fact.

Magness contends that our decision in *Wethered's Administrator v. Boon* supports his position that when a reasonable inquiry could not have revealed the true facts, a finding of inquiry notice is inappropriate.[6] But the transferee in *Wethered's Administrator* investigated his suspicions diligently,[7] so that case is not instructive in answering the certified question. We are not asked to define under what circumstances a diligent investigation by a transferee on inquiry notice of fraud will be sufficient to establish good faith, and we express no view on that issue. Instead, we are simply asked whether an investigation is necessary—that is, whether a transferee on inquiry notice of fraud may achieve good faith without any investigation at all. We conclude that in this situation, a transferee wishing to take advantage of the defense must show it conducted a diligent investigation.

---

[6] 17 Tex. 143, 150 (1856) ("The general doctrine is, that whatever puts a party upon an inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty . . . and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding.").

[7] *See id.* at 148–49, 151 (reversing judgment based on jury finding of inquiry notice where transferee conducted diligent investigation).

The parties and amici also dispute whether *Humphries v. Freeman*, 22 Tex. 45 (1858), supports the proposition that a transferee can take in good faith despite its initial suspicions of fraud when a diligent investigation would not have revealed the fraud. Applying a predecessor statute to TUFTA,[8] we explained in *Humphries*:

> It is not necessary that [transferee] should have been influenced in what he did, by a like fraudulent intent, in order to avoid the assignment as to him also; or that he should have intended to assist [debtor] to defraud his creditors; or that he should have had actual knowledge that such, in fact, was the intention of [debtor]. It is sufficient to affect him with notice, if by ordinary diligence he might have known. If he had a knowledge of such facts, as were calculated to create a suspicion that such was the purpose of [debtor], and to put him upon inquiry; if, in a word, he had reason to know or believe that such was the intention of [debtor], it is sufficient to avoid the assignment as to him, as effectually as if he had actually known it.

*Id.* at 50.

The Receiver relies on the last sentence to argue that a transferee on inquiry notice cannot achieve good faith. But according to the University of Miami as amicus, the second sentence suggests that a transferee on inquiry notice can still take in good faith unless a hypothetical diligent investigation would reveal fraud, as the transferee only has constructive knowledge of what the investigation would reveal. Under this view, Magness would not be responsible for the knowledge that initially raised his suspicions of fraud because the jury found an investigation would have been futile, and he may invoke TUFTA's good-faith defense successfully.

We conclude that *Humphries* does not affect our answer to the certified question. That case addressed whether a creditor seeking to void a transfer must show that the transferee had fraudulent intent or actual knowledge of fraud, or whether a lesser standard of notice is also

---

[8] *See* Act approved Jan. 18, 1840, 4th Cong., R.S., § 2, 1840 Repub. Tex. Laws 28, 29, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 202, 203 (Austin, Gammel Book Co. 1898) (providing fraudulent transfer was void unless "possession shall really and bona fide remain with the donee").

sufficient. We concluded that notice is sufficient and reversed a jury's verdict for the transferee as contrary to the evidence, which showed the facts known to the transferee

> were certainly sufficient to put him on inquiry, and to affect him with notice; and consequently, to affect the property, in his hands, with the fraud of his assignor. The evidence ought to have been decisive in the minds of the jury, that the assignment was fraudulent and void under the statute, as having been made with the intent to delay, hinder and defraud the creditors of [debtor].

*Id.* at 51. We went on to observe that the jury should have been instructed actual knowledge was not required, *id.* at 53, but we had no occasion to parse the concepts of inquiry notice and constructive knowledge to provide a detailed analysis of what proof would be sufficient to avoid the transfer.

Magness also cites a litany of cases he argues "consistently recogniz[e] that a party may be charged with notice only of 'those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.'"[9] The cases cited decide whether an individual may be charged with constructive knowledge, which is not the question before us. Rather, we are asked to decide how a transferee on inquiry notice can prove good faith to invoke TUFTA's defense.

## CONCLUSION

A transferee on inquiry notice of fraud cannot shield itself from TUFTA's clawback provision without diligently investigating its initial suspicions—irrespective of whether a hypothetical investigation would reveal fraudulent conduct. To hold otherwise rewards willful ignorance and undermines the purpose of TUFTA. We answer the certified question no.

---

[9] Quoting *Woodward*, 237 S.W.2d at 289; *see also Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628 (Tex. 1950); *Ruebeck*, 176 S.W.2d at 739–40; *Ron Carter, Inc. v. Kane*, No. 01-10-00815-CV, 2011 WL 5100903 (Tex. App.—Houston [1st Dist.] Oct. 27, 2011, pet. denied) (mem. op.).

_____
J. Brett Busby
Justice

**OPINION DELIVERED:**  December 20, 2019