# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2020

Lyle W. Cayce
Clerk

No. 17-11526

RALPH S. JANVEY, *in his capacity as court-appointed receiver for the* STANFORD INTERNATIONAL BANK LIMITED ET AL,

*Plaintiff—Appellant*,

*versus*

GMAG, L.L.C.; MAGNESS SECURITIES, L.L.C.; GARY D. MAGNESS; MANGO FIVE FAMILY INCORPORATED, *in its capacity as trustee for the* GARY D. MAGNESS IRREVOCABLE TRUST,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CV-401

Before STEWART, DENNIS, and WILLETT, *Circuit Judges*.

CARL E. STEWART, *Circuit Judge*:

This case requires us to determine whether the Texas Uniform Fraudulent Transfer Act's—or TUFTA's—good faith affirmative defense allows Defendants-Appellees to retain fraudulent transfers received while on inquiry notice of a Ponzi scheme. We initially held it does not. We then vacated that decision so that the Supreme Court of Texas could clarify whether good faith requires a transferee on inquiry notice to conduct an

No. 17-11526

investigation into the fraud, or, alternatively, show that such an investigation would have been futile. Having received an answer to our question, we once again hold that the Defendants-Appellees' good faith defense must fail. We therefore REVERSE the district court's judgment and RENDER judgment in favor of Plaintiff-Appellant.

## I. FACTS & PROCEDURAL HISTORY

The Securities and Exchange Commission ("SEC") uncovered the Stanford International Bank ("SIB") Ponzi scheme in 2009. For close to two decades, SIB issued fraudulent certificates of deposit ("CDs") that purported to pay fixed interest rates higher than those offered by U.S. commercial banks as a result of assets invested in a well-diversified portfolio of marketable securities. In actuality, the "returns" to investors were derived from new investors' funds. The Ponzi scheme left over 18,000 investors with $7 billion in losses. The district court appointed Plaintiff-Appellant Ralph S. Janvey (the "Receiver") to recover SIB's assets and distribute them to the scheme's victims.

Defendants-Appellees are Gary D. Magness and several entities in which he maintains his wealth (collectively, the "Magness Parties"). Magness was among the largest U.S. investors in SIB. Between December 2004 and October 2006, Magness purchased $79 million in SIB CDs. As of November 2006, Magness's family trust's investment committee monitored Magness's investments (including the SIB CDs). In July 2008, Bloomberg reported that the SEC was investigating SIB. On October 1, 2008, the investment committee met and, given its perceived risk associated with continued investment in SIB, persuaded Magness to take back, at minimum, his accumulated interest from SIB. Magness's financial advisor, Tom Espy, then approached SIB for a redemption of Magness's investments. SIB, however, informed Espy that redemption would not be possible at that time

since, "given the general market decline, SIB[] wanted to keep the asset value of the CDs on its balance sheet." This statement contradicted SIB's public claims of liquidity and strong financial health. On October 10, 2008, SIB agreed to loan Magness $25 million on his accumulated interest. Between October 24 and 28, 2008, Magness borrowed an additional $63.2 million from SIB. In total, Magness received $88.2 million in cash from SIB in October 2008.

The Receiver sued the Magness Parties to recover funds under theories of (1) fraudulent transfer pursuant to TUFTA and (2) unjust enrichment. The Receiver obtained partial summary judgment as to funds in excess of Magness's original investments, and Magness returned this $8.5 million to the Receiver. The Receiver then moved for partial summary judgment, seeking a ruling that the remaining amounts at issue were fraudulent transfers. The Magness Parties also moved for summary judgment on a good faith defense under TUFTA and the Receiver's unjust enrichment claims. On December 21, 2016, the district court granted the Receiver's motion and denied the Magness Parties' motions.

The case proceeded to trial in January 2017. Right before trial, the district court sua sponte reconsidered its denial of summary judgment on the Magness Parties' unjust enrichment claims and concluded that there had been no unjust enrichment. Thus, the only issue presented to the jury was whether the Magness Parties received the $79 million, already determined to be fraudulent transfers, in good faith. After the Magness Parties presented their case-in-chief, the Receiver moved for judgment on the grounds that (1) the Magness Parties were estopped from claiming that they took the transfers in good faith and (2) no reasonable jury could conclude that the Parties established the TUFTA good faith defense. The district court did not rule on the motion. The jury found that the Magness Parties had inquiry notice in October 2008 that SIB was engaged in a Ponzi scheme, but not actual

No. 17-11526

knowledge. The jury also found that further investigation by the Magness Parties into SIB would have been futile.

The Receiver moved for entry of judgment on the verdict, arguing that the jury's finding of inquiry notice meant that, as a matter of law, Magness could not have acted in good faith. The Receiver also renewed his motion for judgment as a matter of law. The district court denied the Receiver's motions and held that the Magness Parties had satisfied their good faith defense. The Receiver renewed his post-trial motions and moved for a new trial. The district court denied these motions and issued its final judgment that the Receiver take nothing aside from his prior receipt of $8.5 million.

Appealing that judgment, the Receiver argued that (1) the Magness Parties were estopped from contesting their actual knowledge of SIB's fraud or insolvency; (2) the jury's finding of inquiry notice defeated the Magness Parties' TUFTA good faith defense as a matter of law; (3) the district court's jury instructions were erroneous and reduced the Parties' burden to establish good faith; and (4) the district court erred by granting the Parties' motion for summary judgment on the Receiver's unjust enrichment claims.

On January 9, 2019, we decided this case on the second argument. Relying on the text of TUFTA and caselaw from the Texas lower courts, this court, and the district courts in this Circuit, we reversed the trial court's judgment and rendered judgment in favor of the Receiver. *See Janvey v. GMAG, L.L.C.*, 913 F.3d 452, 458 (5th Cir. 2019). Magness then filed petitions for panel rehearing and rehearing en banc, in which he argued that we should certify a question to the Supreme Court of Texas regarding the proper test for determining TUFTA good faith. Because the Texas courts to consider TUFTA good faith had not considered whether it includes a diligent investigation requirement or a futility exception, we, on May 24, 2019, vacated our prior opinion and certified the following question to the Supreme

Court of Texas: "Is the [TUFTA] 'good faith' defense against fraudulent transfer clawbacks . . . available to a transferee who had inquiry notice of the fraudulent behavior, did not conduct a diligent inquiry, but who would not have been reasonably able to discover that fraudulent activity through diligent inquiry?" *See Janvey v. GMAG, L.L.C.*, 925 F.3d 229 (5th Cir. 2019).

On December 20, 2019, the Supreme Court of Texas answered our question in the negative and held that "[a] transferee on inquiry notice of fraud cannot shield itself from TUFTA's clawback provision without diligently investigating its initial suspicions [of fraud]—irrespective of whether a hypothetical investigation would reveal fraudulent conduct." *Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 133 (Tex. 2019). The Supreme Court of Texas, however, declined to clarify "under what circumstances a diligent investigation by a transferee on inquiry notice of fraud will be sufficient to establish good faith." *Id.* at 132. It also took no position on whether the Magness Parties performed a diligent investigation into their initial suspicions of SIB's Ponzi scheme. *Id.* at 128 n.1.

Because this case is resolved by our TUFTA good faith analysis, we once again only reach the second of the Receiver's arguments.

## II. STANDARD OF REVIEW

We review de novo a renewed motion for judgment as a matter of law. *Montano v. Orange County*, 842 F.3d 865, 873 (5th Cir. 2016). If "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party," judgment as a matter of law is proper. *Id.* (quoting *Williams v. Hampton*, 797

F.3d 276, 282 (5th Cir. 2015)). Evidence is viewed "in the light most favorable to the nonmovant." *Id.*

## III. DISCUSSION

The Magness Parties offer several arguments for affirming the district court's judgment. For the reasons that follow, we reject each one.

TUFTA allows a transferee who receives a transfer in good faith and in exchange for reasonably equivalent value to avoid a clawback action by the defrauded creditor. Tex. Bus. & Com. Code § 24.009(a). The transferee bears the burden of proving TUFTA's good faith affirmative defense. *Flores v. Robinson Roofing & Constr. Co.*, 161 S.W.3d 750, 756 (Tex. App.—Fort Worth 2005, pet. denied). Under TUFTA, good faith means that "[a] transferee must show that its conduct was honest in fact, reasonable in light of known facts, and free from willful ignorance of fraud." *GMAG*, 592 S.W.3d at 129. Texas courts evaluating a TUFTA good faith defense consider whether a transferee received fraudulent transfers with actual knowledge or inquiry notice of fraud or insolvency. *See, e.g.*, *Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74, 85 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A transferee on inquiry notice of fraudulent behavior cannot satisfy the good faith defense without first diligently investigating his or her initial suspicions of fraud. *GMAG*, 592 S.W.3d at 133.

### A. Record Evidence

The Magness Parties first argue that we should affirm the district court's judgment in favor of them because the Parties presented extensive

evidence at trial that they "reasonably" investigated their initial suspicions of SIB's fraud.

Even assuming, without deciding, that "reasonably" equates to "diligently" for the purposes of TUFTA good faith, [1] we are not persuaded by the Magness Parties' argument. The question we must answer for the purposes of the Parties' good faith defense is whether they diligently investigated their initial suspicions of SIB's Ponzi scheme during the time period—October 2008—the jury found them to be on inquiry notice. Yet they assert:

> Shortly after it was formed [in *2006*], and as part of its fiduciary obligations to Magness, [the investment committee] investigated the Stanford CDs because they were the investments about which the [] committee had the least existing knowledge. Then, in *2007*, [the investment committee] asked a third-party consultant (Chuck Wilk), who was familiar with non-traditional investments, to further investigate the investment . . . . As the world economy roiled in the beginning of the mortgage crisis, [the Magness Parties] again investigated Stanford in *March 2008* by arranging for a phone conversation with [SIB's] President, Juan Rodriguez-Tolentino—who later turned out to be a figurehead that did not know Stanford was a Ponzi scheme—to assess SIB's investments' exposure to the mortgage markets. And, even *after* receiving the October 2008 loan transfers at issue here, because [the Magness Parties] still held their investments in SIB CDs, and had millions of [their] dollars on deposit, in

---

[1] Since, as discussed below, the Magness Parties have not shown that they diligently investigated SIB's Ponzi scheme while on inquiry notice, we leave for another day the discussion of what actions a party must take to show that they diligently investigated fraud for the purposes of a TUFTA good faith defense.

*January 2009*, [they] arranged a further meeting with Stanford executives to discuss the health of SIB.

As indicated by the above-quoted passage, the Magness Parties investigated Magness's investments prior to and after October 2008. And instead of investigations into suspected fraud, they were merely inquires by the investment committee to inform itself of the nature and health of Magness's investments. The record does not show the Parties accepted the fraudulent transfers in good faith.

### B. Receiver's Statements

Next, the Magness Parties argue that the Receiver has conceded that they diligently investigated their initial suspicions of SIB's fraud. The Magness Parties rely on two statements from opposing counsel that purportedly show that they conducted such an investigation during the relevant time period. The first statement was made during the Receiver's opening statement in which counsel said that the Magness Parties asked SIB's president in March 2008: "What exactly is this bank investigated in?" and "What strategies is this bank involved in that backs up these certificates of deposit?" But, as indicated above, the statement refers to questions that the Magness Parties posed to SIB's president in March 2008, which predated the period during which the jury found them to be on inquiry notice by seven months. The second statement was made in the Receiver's objections to the Magness Parties' proposed jury instructions in which counsel asserted: "[T]he undisputed facts in this case show that the Magness Defendants . . . did investigate the facts that put them on notice of SIB's fraud or insolvency." But the statement does not conclusively show that this investigation occurred when the Magness Parties were found to be on inquiry notice (or whether it was conducted diligently). In sum, neither of the cited

No. 17-11526

statements demonstrate that they diligently investigated their initial suspicions of SIB's Ponzi scheme while on inquiry notice.

## C. Remand for Retrial

The Magness Parties additionally argue that a remand for retrial is necessary since the district court erroneously instructed the jury to determine whether an investigation into SIB's fraud would have been futile instead of whether the Parties diligently investigated their initial suspicions of the Ponzi scheme.[2] They contend that "the record evidence is more than sufficient for a reasonable jury to conclude that the [Magness Parties'] investigation was diligent . . . ." But, as discussed above, that evidence is nowhere to be found. Not only do the Magness Parties' citations to the record and the Receiver's statements not support a conclusion that they diligently investigated their initial suspicions of SIB's fraud while on inquiry notice, but other parts of the record also support an opposite conclusion. For instance, when asked whether he requested additional information from SIB between October and December 2008, Magness testified, "I don't think so." And Magness's witnesses testified that they did not see a need to inquire into whether SIB was committing fraud until several months after the Magness Parties were found to be on inquiry notice. The Magness Parties have therefore not shown that there is any evidentiary basis for a reasonable jury to find that they diligently investigated their initial suspicions of SIB's fraud

---

[2] Curiously, the Magness Parties argue that a new trial is needed because the district court erred in providing a futility instruction even though the Parties requested that instruction.

while on inquiry notice.[3] Thus, any error that the district court committed in instructing the jury on a futility exception was harmless. *See Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 404 (5th Cir. 2000) ("Even if an instruction erroneously states the applicable law or provides insufficient guidance, [we] will not disturb the judgment unless the error could have affected the outcome of the trial.")

For this reason, we also reject the Magness Parties' argument that a new jury trial is warranted since the Supreme Court of Texas's response to our certified question "is a new pronouncement of Texas law that departs from the law the parties and the district court considered in crafting the jury instructions." In support of their argument, the Parties rely on *Lang v. Texas & Pacific Railway Company*, in which we reversed the district court because we found that it had erred in refusing to give an instruction in a wrongful death action. 624 F.2d 1275, 1280 (5th Cir. 1980). "[R]elying upon the settled law in this circuit, the district court [in *Lang*] refused the proffered charge. However, . . . subsequent to the trial and while the appeal was pending, the Supreme Court," in another case, "effectively changed the law in this area." *Id.* at 1279 (internal citation omitted). Given this intervening Supreme Court precedent, we therefore held a new trial was warranted on the issue of damages. *Id.* at 1280. The Magness Parties' reliance on *Lang*, however, is misplaced because we implicitly concluded there that the district court's error in refusing to give the requested jury instruction was harmful. That is

---

[3] The Magness Parties assert that we erroneously concluded in a prior opinion that the Parties "did not undertake an investigation prior to accepting the transfers." *See GMAG*, 925 F.3d at 233. They observe that we predicated this conclusion on a statement that "[d]efendants did not perform any inquiry before redeeming their CDs" from SIB, *id.* (quoting *Janvey v. Alguire*, No. 09-CV-0724, 2016 WL 11271878, at *4 (N.D. Tex. Dec. 21, 2016)), but that the "[d]efendants" referenced there do not include the Magness Parties. Regardless of our reliance on *Alguire*, the Parties have still not shown that they diligently investigated their initial suspicions of SIB's fraud while on inquiry notice.

not the case here. Nor does the Magness Parties' reliance on *Robinson v. Heilman*, 563 F.2d 1304 (9th Cir. 1977), compel a different result. *Robinson* addressed an unrelated issue, namely whether the defendant's failure to object to a jury instruction prevented the defendant from arguing on appeal that the instructions violated intervening Supreme Court caselaw. *Id.* at 1307.

Furthermore, the Magness Parties have not convinced us that depriving them of a second jury trial would violate their Seventh Amendment and due-process rights. In support of their argument, the Parties rely on three Supreme Court cases. Yet each of these cases is inapposite.

The first case, *Granfinanciera, S.A. v. Nordberg*, held that parties who have not submitted a claim against a bankruptcy estate under § 548 of the Bankruptcy Code have a Seventh Amendment right to a jury trial when sued by a bankruptcy trustee to recover an allegedly fraudulent monetary transfer. 492 U.S. 33, 64 (1989). To the extent that TUFTA is analogous to § 548 of the Bankruptcy Code,[4] *Granfinanciera* stands at most for the proposition that actions to recover fraudulent transfers are entitled to be tried before a jury. But our inquiry here is not whether the Receiver and the Magness Parties had a right to have this case tried by a jury in the first instance. Rather, it is whether the Parties are entitled to another jury trial on a specific issue— whether they diligently investigated their initial suspicions of SIB's Ponzi scheme while on inquiry notice—when the record indicates that no reasonable jury could find for the Parties on that issue. We conclude that they are not. The Seventh Amendment does not require us to remand for a new

---

[4] A proposition that itself is questionable. *See GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 312 n.21 (5th Cir. 2014) ("Certain authorities indicate that § 548 is not necessarily substantively congruent with state-law counterparts, despite a common ancestry.").

trial when the verdict cannot be sustained on the trial record. *See Weisgram v. Marley Co.*, 528 U.S. 440, 449–50 (2000).

The second case relied upon by the Magness Parties, *Byrd v. Blue Ridge Rural Electric Co-op., Inc.*, observes that the Seventh Amendment "assigns the decisions of disputed questions of fact to the jury." 356 U.S. 525, 537 (1958). But, as noted above, we have no disputed question of fact on whether the Parties diligently investigated their initial suspicions of SIB's fraud while on inquiry notice.

The third case upon which the Magness Parties rely—*Philip Morris USA v. Williams*—notes that due process provides parties with "an opportunity to present every available defense." 549 U.S. 346, 353 (2007) (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)). Yet the Parties have had an opportunity to establish the affirmative defense available to them—good faith—and so we would not violate the Parties' due-process rights in forgoing a second jury trial.

Consequently, the Magness Parties have not shown that the Seventh Amendment or due process requires us to remand for another jury trial.

### D. Completeness of the Existing Record

Finally, the Magness Parties contend that we cannot render a decision in favor of the Receiver without a jury finding "as to when [the Magness Parties] first—or initially—had suspicions [of SIB's fraud] or when [they] became charged with inquiry notice." Yet requiring a jury to make these additional findings is not needed for us to adjudicate this case. As the Magness Parties concede, "the determination of whether one is on inquiry [notice] is measured by all things known at the time of transfer." *See GMAG*, 592 S.W.3d at 130 ("Whether inquiry notice exists is determined at the time of the transfer . . . ."). The Parties do not dispute—nor could they—that the fraudulent transfers at issue occurred in October 2008. So, the relevant

finding, which we have, is that the Magness Parties were on inquiry notice during this time period. And the Magness Parties have not shown that they diligently investigated their suspicions (initial or otherwise) of SIB's Ponzi scheme while on inquiry notice. Hence, they have not demonstrated that, as a matter of law, we cannot render a decision in favor of the Receiver based on the existing record.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment and RENDER judgment in favor of the Receiver.