# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2024

Lyle W. Cayce
Clerk

No. 22-10235

RALPH S. JANVEY, *in his Capacity as Court-Appointed Receiver for* THE STANFORD INTERNATIONAL BANK LIMITED, *et al.*,

*Plaintiff—Appellee*,

*versus*

GMAG, L.L.C.; MAGNESS SECURITIES, L.L.C.; GARY D. MAGNESS; MANGO FIVE FAMILY INCORPORATED, *in its Capacity as Trustee for* THE GARY D. MAGNESS IRREVOCABLE TRUST,

*Defendants—Appellants*,

CONSOLIDATED WITH

No. 22-10429

SECURITIES AND EXCHANGE COMMISSION, *et al.*,

*Plaintiffs*,

*versus*

GMAG, L.L.C.; GARY D. MAGNESS IRREVOCABLE TRUST; GARY D. MAGNESS; MAGNESS SECURITIES, L.L.C.,

*Defendants—Appellants*,

*versus*

Ralph S. Janvey,

*Appellee.*

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:15-CV-401, 3:09-CV-298

———————————————————

ON SECOND PETITION FOR REHEARING EN BANC

Before Stewart, Dennis, and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

On March 20, 2024, the court denied rehearing *en banc* but withdrew the initial opinion and substituted a new one. *Janvey v. GMAG, L.L.C.*, 98 F.4th 127 (5th Cir. 2024). The mandate issued upon denial of rehearing. On April 3, 2024, Defendants (whom in our previous opinions and again here are referred to as "Magness") filed another petition for rehearing *en banc* or by the panel. We RECALL the mandate in order to rule on the petition. No judge in regular active service requested the court be polled on rehearing *en banc*; the second petition for rehearing *en banc* is therefore DENIED. Rehearing by the panel is also DENIED.

I.

The most recent petition for rehearing argues it was error for us to affirm the district court's finding that Magness had "unclean hands" and that a setoff would not be permitted. The error is said to be that the finding of unclean hands must be made by a jury, and that has not occurred.

The issue of the role of jurors is one of Texas law. Before examining that law, we review relevant procedural events in this long-running case. The

2

No. 22-10235
c/w No. 22-10429

determination of unclean hands was made by the district court based on a jury finding in 2017, affirmed by this court in 2020, that when Magness received the relevant transfer, he was on inquiry notice that the Stanford International Bank ("SIB") was a Ponzi scheme. *Janvey v. GMAG, L.L.C.*, 977 F.3d 422, 426 (5th Cir. 2020). The Supreme Court of Texas had earlier answered a certified question from this court about how being on inquiry notice but not investigating suspicions affected a party's "good faith" under the Texas Uniform Fraudulent Transfer Act, or TUFTA. *Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 126 (Tex. 2019); Tex. Bus. & Com. Code § 24.001, *et seq*. The Texas court answered: "If a transferee has actual knowledge of facts that would lead a reasonable person to suspect the transfer is voidable under TUFTA but does not investigate, the transferee may not achieve good-faith status to avoid TUFTA's clawback provision." *Janvey*, 592 S.W.3d at 128. We applied the answer and held that the evidence "does not show the [Magness] Parties accepted the fraudulent transfers in good faith." *Janvey*, 977 F.3d at 428.

The specific ruling being contested now is the district court's 2022 denial of a setoff, a denial the court explained this way:

> But he who comes into a court of equity must do so with clean hands. The Receiver has obtained a judgment against Magness to rectify the latter's receipt of tens of millions of dollars of fraudulent transfers from the Stanford entities. By virtue of this adverse judgment Magness seeks preferential treatment in the form of what amounts to an option to put his CDs back to the receivership estate at par. The Court will not countenance this inequitable outcome.

We now consider whether a jury had to make the finding of unclean hands. Magness's rehearing petition cites three opinions that he argues support that a jury must make the relevant finding about unclean hands, not a judge: *Chow v. McIntyre*, No. 01-21-00658-CV, 2023 WL 7778602 (Tex.

3

No. 22-10235
c/w No. 22-10429

App.—Houston [1st Dist.] Nov. 16, 2023, no pet.); *FDIC v. Murex LLC*, 500 F. Supp. 3d 76 (S.D.N.Y. 2020); *LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804 (N.D. Cal. 2019). The list includes one Texas intermediate court opinion and two federal district court opinions interpreting the law of other states. Before reviewing them, we will examine precedents from the Supreme Court of Texas. We then can decide if any of what at best may be persuasive authorities that Magness offers affects what the Texas high court has held.

As we consider the caselaw, we divide the analysis of unclean hands into three logical steps: (1) what did the defendant do; (2) do those actions constitute unclean hands; and (3) how should unclean hands affect any relief granted in the case? As we will explain, it is clear that the first issue is for the jury if the facts are contested and the third always for the court. Our question is whether what we have identified as the second step is what the jury must resolve to complete its work or whether it is the first part of the court's task.

As another preliminary matter, it will be helpful to know how Texas courts define the relevant concept. "Unclean hands" means that a party's "conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing." *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (quoting *Thomas v. McNair*, 882 S.W.2d 870, 880 (Tex. App.—Corpus Christi-Edinburg 1994, no writ)). Further, "[i]t is a matter within the sound discretion of the trial court to determine whether [a party] has come into court with clean hands." *Thomas*, 882 S.W. 2d at 880. We get ahead of ourselves — supreme court opinions first.

In a 1999 decision, the Supreme Court of Texas discussed whether an attorney had to forfeit his entire fee because of his breach of a fiduciary duty

4

to his client. *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999). The issues for the court were described this way:

> Thus, when forfeiture of an attorney's fee is claimed, a trial court must determine from the parties whether factual disputes exist that must be decided by a jury *before the court can determine whether a clear and serious violation of duty has occurred*, whether forfeiture is appropriate, and if so, whether all or only part of the attorney's fee should be forfeited. Such factual disputes may include, without limitation, whether or when the misconduct complained of occurred, the attorney's mental state at the time, and the existence or extent of any harm to the client. If the relevant facts are undisputed, these issues may, of course, be determined by the court as a matter of law.

*Id.* at 246 (emphasis added). Thus, the court held that it was for the court to decide the seriousness of the violation of a duty, *i.e.*, whether it was "unconscientious, unjust, or marked by a want of good faith." *In re Jim Walter Homes, Inc.*, 207 S.W.3d at 899.

In a later decision, that same court set out some general principles and discussed its *Burrow* decision. In general terms, it described the issue of the division of responsibility for jury and judge:

> [W]hen contested fact issues must be resolved before equitable relief can be determined, a party is entitled to have that resolution made by a jury. Once any such necessary factual disputes have been resolved, *the weighing of all equitable considerations* . . . and the ultimate decision of how much, if any, equitable relief should be awarded, *must be determined by the trial court*.

*Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 741 (Tex. 2018) (alterations in original) (emphasis added) (citations omitted).

The court then made this more pointed statement of law: "[I]n a quantum-meruit case, once the jury decides the disputed fact issues, the trial

court should weigh 'all equitable considerations (*such as whether . . . the plaintiff has "unclean hands"*).'" *Id.* at 741–42 (emphasis added) (summarizing *Hudson v. Cooper*, 162 S.W.3d 685, 688 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

In the *Hudson* case on which the supreme court relied, the court elaborated on the unclean hands issue being one for the trial court:

> Once any such necessary factual disputes have been resolved, the weighing of all equitable considerations (such as whether the defendant has been unjustly enriched, the plaintiff would be unjustly penalized if the defendant retained the benefits of the partial performance without paying for them, and the plaintiff had "unclean hands") and the ultimate decision of how much, if any, equitable relief should be awarded, must be determined by the trial court (rather than a jury).

162 S.W.3d at 688 (citing *Burrow*, 997 S.W.2d at 245–46).

Similarly, there are several Texas appellate court opinions that make a holding much like the following: "The determination of whether a party has come to court with unclean hands is left to the discretion of the trial court." *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied) (citing *In re Francis*, 186 S.W.3d 534, 551 (Tex. 2006) (Wainwright, J., dissenting)). The cited *Francis* dissent discussed unclean hands, but the majority did not. The dissent explained that "[w]hether a party has come to court with clean hands is a determination left to the discretion of the trial court." *Francis*, 186 S.W.3d at 551 (Wainwright, J., dissenting) (citing *Grohn v. Marquardt*, 657 S.W.2d 851, 855 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.)). The cited *Grohn* decision used the same language, that a "determination of whether a party has come to court with unclean hands is left to the discretion of the trial court." 657 S.W.2d at 855.

No. 22-10235
c/w No. 22-10429

Each decision makes clear that once disputed facts of what a defendant did are resolved, it is the court that determines if that conduct constitutes unclean hands and how unclean hands should affect the relief in the case.

Next to be considered are the three opinions that Magness cites to us. We start with the Texas court of appeals decision that says "[t]he jury was not asked to find whether Chow and Holloway's conduct was inequitable, which is a fact question." *Chow*, 2023 WL 7778602, at *16. It cited another intermediate appellate court opinion that made a similar holding. *See Grant v. Laughlin Env't*, No. 01-07-00227-CV, 2009 WL 793638, at *11 (Tex. App.—Houston [1st Dist.] Mar. 26, 2009, pet. denied) (mem. op.). In the case before us, of course, a jury has already made one central decision, namely, that Magness was on inquiry notice of possible fraud. Moreover, decisions by the supreme court override any contrary intermediate-court holdings.

Magness also cites two out-of-circuit district court cases. One of them applied New York law. *See Murex*, 500 F. Supp. 3d at 121–22. The court found disputed fact issues regarding what the allegedly unjust party had done. *Id.* at 122. Further, "Murex has not offered any argument or case authority — and the Court finds none — that such a lapse constitutes the 'immoral, unconscionable conduct' required for the unclean-hands defense to apply." *Id.* Looking for case authority that certain conduct constitutes unclean hands is looking for what courts have held, not juries.

The other cited opinion applied California law. *Loskutoff*, 362 F. Supp. 3d at 821. It rejected an argument about unclean hands because it found that the evidence at most supported negligent conduct. *Id.* Magness relies on one phrase at the end of the analysis, that "no reasonable juror could find that Plaintiff acted with unclean hands." *Id.* That court cited no authority that the unclean-hands issue under California law was for the jury.

7

No. 22-10235
c/w No. 22-10429

Magness also insists that no authority supports that fault under TUFTA *automatically* results in unclean hands. We do not interpret the district court's decision here as having been automatic. Instead, it was a finding based on this judge's thorough knowledge of the facts of the transfer.

In conclusion, Magness found one intermediate Texas appellate court opinion that gives some support that it is a jury question whether certain facts constitute inequitable conduct. The jury finding made as to Magness may satisfy that holding, but regardless, we take our direction from the state's supreme court. We see no disputed facts about the relevant conduct. A jury in 2017 found that Magness was on inquiry notice that SIB was engaged in fraud. This court in 2020 concluded that the evidence did not support that Magness had acted in good faith when he received the relevant transfers and that the result would be to deny a setoff.

We return to the point made earlier in this opinion that the analysis of unclean hands could be divided into three sequential questions — what did the party do; should those deeds be labeled unclean hands; if so, what is the effect on any relief in the case? The controlling caselaw gives that second question to the court, not a jury. Even if there is some role for a jury under Texas law as to that second question, the role was satisfied in this case.

The district court, with all the evidence before it, held that Magness was not entitled to a setoff. There was no error in that decision. That court did not hold that all TUFTA violations barred a setoff, but this one did. Indeed, nothing in our opinion should be interpreted as a holding that when TUFTA is violated, a setoff is categorically disallowed.

## II.

There are a few other issues.

No. 22-10235
c/w No. 22-10429

We agree with Magness that a factual recitation in our earlier opinion denying rehearing mislabeled what he was seeking leave to file. Our opinion stated the district court denied leave to amend his complaint when leave was sought to file a new complaint. The difference has no effect here.

Magness also takes issue with three other statements from our opinion. (1) "[A] jury found Magness had enough notice of SIB's possible financial improprieties to be suspicious. Magness may well have been acting on those suspicions in seeking a loan." (2) "It is a fair assessment that Magness obtained the $79 million loan because he contemplated significant financial troubles ahead for SIB." (3) "After reports that the SEC was investigating SIB, Magness sought to redeem his investments." *Janvey*, 98 F.4th at 130–31, 143–44 (citation omitted).

The first two numbered statements are not independent fact findings. Our opinion properly reviewed the district court's denial of equitable relief under an abuse of discretion standard. Further, the statement of what "may well" have occurred is not a fact finding.

As to the third, Magness asserts "[t]hat statement is derived from [this court's 2020 opinion]. However, that portion of [the opinion] does not cite to the record and is inaccurate." The portion of the opinion it references is this: "In July 2008, Bloomberg reported that the SEC was investigating SIB. On October 1, 2008, the investment committee met and, given its perceived risk associated with continued investment in SIB, persuaded Magness to take back, at minimum, his accumulated interest from SIB." *Janvey*, 977 F.3d at 425. To the extent Magness contests a factual recitation in a 2020 opinion, a petition for rehearing now is far too late. Further, the statement that "Magness sought to redeem his investments" once learning of an SEC investigation of SIB is correct. *Janvey*, 98 F.4th at 130–31.

The petition for rehearing and all pending motions are DENIED.